THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: August 16, 2018



G. Michael Halfenger
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Vincent J. Cicirello,  Case No. 11-32676-GMH

Debtor.  Chapter 7

**DECISION AND ORDER ON TRUSTEE'S MOTION FOR TURNOVER**

Vincent Cicirello is an insurance agent for American Family Mutual Insurance Company. CM-ECF Doc. No. 103. Cicirello and American Family entered into an Agent Agreement effective January 1, 1993. *Id.* The Agreement permits Cicirello under certain conditions to assign policies to another agent in exchange for compensation. CM-ECF Doc. No. 100, Ex. A, §6.w. The Agreement also allows Cicirello under certain conditions to terminate the Agreement and receive "extended earnings" payments. *Id.* §6.h.–u.

The chapter 7 trustee filed a motion for turnover under 11 U.S.C. §542 seeking to assign Cicirello's policies to another agent under the Agreement. CM-ECF Doc. No. 88. The trustee also objected to Cicirello's claim that any future financial benefits under the Agreement are exempt under 11 U.S.C. §522(d)(10)(E). CM-ECF Doc. No. 75.

Cicirello objects to the trustee's motion for turnover. CM-ECF Doc. No. 90. He contends that (1) the Agreement is an executory contract and the trustee must assume the Agreement in order to exercise any rights under it and (2) 11 U.S.C. §365(c)(1) prohibits the trustee from assuming the contract. *Id.*

On January 29, 2018, the court held a hearing and announced a tentative ruling on the trustee's motion for turnover. The court left open two additional issues raised by the trustee: "(1) whether the trustee can elect to assume only specific provisions of the contract under 11 U.S.C. §365, and (2) whether the court has equitable authority to allow the trustee to monetize certain rights under the contract, notwithstanding §365(c), in order to remedy the debtor's non-disclosure of those rights in his chapter 13 schedules?"[*] CM-ECF Doc. No. 109, at 2. The court's subsequent order set a deadline by which the parties had to submit any additional briefing in response to the court's tentative ruling. *Id.*

The trustee timely filed a brief addressing only whether the trustee can elect to assume only specific provisions of the contract under 11 U.S.C. §365. CM-ECF Doc. No. 110. As a result, the trustee has forfeited any other bases for disputing the court's tentative ruling, including his contention that the court can afford him the relief he seeks using its "equitable authority." Cicirello also timely filed a supplemental brief. CM-ECF Doc. No. 112.

After considering the additional submissions, the court, for the reasons stated at the January 29 hearing as well as those that follow, denies the trustee's motion for turnover.

I

Section 542 requires "an entity . . . in possession, custody, or control, during the case, of property *that the trustee may use, sell or lease under section 363 of this title* . . . [to]

---

[*] Cicirello filed this bankruptcy case under chapter 13. The court converted the case to chapter 7 on March 23, 2017, based on the notice of conversion Cicirello filed on March 22, 2017. CM-ECF Doc. No. 52.

deliver to the trustee, and account for, such property or the value of such property." 11 U.S.C. §542(a) (emphasis added). Section 363(b) authorizes the trustee to "use, sell, or lease . . . property of the estate." 11 U.S.C. §363(b)(1). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). Accordingly, the estate includes all contractual rights the debtor had at the time of the bankruptcy filing. *In re Res. Tech. Corp.*, 254 B.R. 215, 220 (Bankr. N.D. Ill. 2000).

When the trustee seeks to exercise rights under an executory contract, however, §365 of the Code applies. The Bankruptcy Code does not define "executory contract." The Seventh Circuit has adopted the so-called Countryman definition, which provides that an executory contract is an agreement "where significant unperformed obligations remain on both sides." *Mitchell v. Streets (In re Streets & Beard Farm P'ship)*, 882 F.2d 233, 235 (7th Cir. 1989) (citing Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973) (defining an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other")). To determine "the significance of the remaining obligations under a contract [one] look[s] to relevant state law." *Id.*

Section 365 limits the trustee's ability to assume or reject executory contracts under circumstances described in §365(b)–(d). 11 U.S.C. §365(a) ("Except as provided . . . in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract . . . of the debtor."). Subsection (c) of §365 prohibits the trustee from assuming an executory contract if applicable law— that is, "any law applicable to a contract, other than bankruptcy law," *In re XMH Corp.*, 647 F.3d 690, 695 (7th Cir. 2011)—excuses the other party to the contract from accepting performance from someone other than the debtor and the other party does not consent to assumption:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
>> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>>
>> (B) such party does not consent to such assumption or assignment[.]

11 U.S.C. §365(c). Section 365(c) thus "prevent[s] a trustee from forcing a party to accept performance from, or provide performance to, someone other than the party with whom it contracted in those situations where the identity of the party is central to the obligation itself." *Metro. Airports Comm'n v. Nw. Airlines, Inc. (In re Midway Airlines, Inc.)*, 6 F.3d 492, 495 (7th Cir. 1993).

II

The trustee rightly acknowledges that both Cicirello and American Family have ongoing obligations under the Agency Agreement they entered into on January 1, 1993. CM-ECF Doc. No. 110, at 3. Among other things, Cicirello must continue exclusively representing American Family as a licensed insurance agent; he must continue collecting and holding premiums belonging to American Family as American Family's fiduciary; he must continue to meet American Family's production, profitability, and service requirements; and he must continue directing his best efforts to advancing the interests of American Family. CM-ECF Doc. No. 100, Ex. A, §§2, 4.a., 4.d., 4.h. & 4.i. American Family must continue to pay Cicirello based on the company's compensation schedules and incentives and furnish Cicirello with records of policies he writes, and it must pay Cicirello "extended earnings"—amounts the company has agreed to pay under specific circumstances after the parties terminate the agreement—and deliver notices and statements of due premiums to holders of policies written by Cicirello. *Id.*

§§5.a.–c., 6.j. & 6.l. Failure of either party to perform these obligations would constitute a material breach of the Agreement.

The Agreement is, therefore, an executory contract governed by §365. Section 365(c)(1) prohibits the trustee from assuming an executory contract when applicable law excuses acceptance of performance from someone other than the debtor. Wisconsin law so excuses acceptance of non-party performance in personal-services contracts where performance requires skill, experience, business judgment, or other nonfungible attributes. *Johnson v. Vickers*, 120 N.W. 837 (Wis. 1909); see also *Cont'l Ins. Co. v. I. Bahcall, Inc.*, 39 F. Supp. 315, 318 (E.D. Wis. 1941) (Under Wisconsin law, "[a] party to a contract cannot assign to another his personal duty to fulfill his obligations under the contract, in the absence of the consent of the other party, especially where such party was induced to make the contract because of his personal faith in the fo[r]mer's skill, honesty, and reliability.").

The Agreement requires Cicirello to solicit applications for insurance and deliver insurance policies on American Family's behalf. Wisconsin requires an individual selling or servicing insurance policies to be licensed. Wis. Stat. §628.03(1) ("No natural person may perform, offer to perform, or advertise any service as an intermediary in this state, unless the natural person obtains a license under s. 628.04 or 628.09 . . . ."); see also Wis. Stat. §628.02(4) ("An intermediary is an insurance agent if the intermediary acts as an intermediary other than as a broker."). The Agreement similarly requires Cicirello to be a licensed insurance agent. CM-ECF Doc. No. 100, Ex. A, §2. Beyond that, the Agreement requires, among other things, Cicirello to act as American Family's fiduciary in the collection of premiums, "maintain a good reputation" in his community, and advance American Family's interests exclusively to the best of his ability. *Id.* §4.d. & i. The Agreement thus indisputably requires a person with special characteristics, skills, and business judgment to perform the duties it requires of Cicirello. Consequently, Wisconsin law would not require American Family to accept

performance from someone other than Cicirello, and, as a result, the trustee cannot assume the Agreement.

The court announced this conclusion at the January 29 hearing, and the trustee's subsequent filing does not contest that the Agreement requires Cicirello to perform duties that are non-assignable. Nor does the trustee dispute the conclusion that he cannot assume a contract that the governing state law makes non-assignable. Instead, the trustee argues that he can assume a part of the Agreement—the Agreement's provisions addressing reassignment of insurance policies to other American Family agents. CM-ECF Doc. No. 110, at 3, 5.

Executory contracts, however, must be assumed in their entirety. E.g., *Cinicola v. Scharffenberger*, 248 F.3d 110, 119–20 (3d Cir. 2001); *In re Guerrero*, 536 B.R. 817, 822 (Bankr. E.D. Wis. 2015). "[A]n executory contract may not be assumed in part and rejected in part." *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Tr. (In re Nat'l Gypsum Co.)*, 208 F.3d 498, 506 (5th Cir. 2000). The trustee does not dispute this general principle but argues that the court should construe the Agreement as consisting of more than one contract.

More specifically, the trustee contends that the Agreement contains two severable contracts: (1) an executory contract related to the selling and servicing of policies and (2) a non-executory contract related to assigning existing policies to another agent and terminating the Agreement. CM-ECF Doc. No. 110, at 3. Under this theory, §365(c) does not apply to the non-executory contract; the trustee is free to assign insurance policies to another agent under the Agreement and use those proceeds for the benefit of unsecured creditors.

Severability of an agreement is determined by the state law that governs the agreement. *United Air Lines, Inc. v. HSBC Bank USA (In re United Air Lines, Inc.)*, 453 F.3d 463, 467 (7th Cir. 2006). The Agreement is "deemed to have been made within the State of Wisconsin and shall be interpreted and construed in accordance with the laws of the

State of Wisconsin." CM-ECF Doc. No. 100, Ex. A, §7.d. Accordingly, the court looks to Wisconsin law to decide whether the Agreement is severable.

Both parties agree that *Davies v. J.D. Wilson Co.*, 85 N.W.2d 459 (Wis. 1957), provides the relevant standard for determining whether a contract is severable under Wisconsin law. CM-ECF Doc. No. 110, at 2; CM-ECF Doc. No. 112, at 2. "In determining whether a contract is entire or severable, the criterion is to be found in the question whether the whole quantity, service, or thing—all, as a whole—is of the essence of the contract. If it appear[s] that the contract was to take the whole or none, then the contract would be entire." *Davies*, 85 N.W.2d at 475 (internal quotations omitted). Courts must primarily consider the intent of the parties, which can be deduced from "the terms of the contract, its subject matter, and other circumstances disclosed by the evidence." *Winston v. Gersmehl*, 172 N.W.2d 809, 811 (Wis. 1969). "Whether a contract is divisible is a question of mixed fact and law. What the parties agreed to is a question of fact. Whether their agreement is divisible is a question of law." *Spensley Feeds, Inc. v. Livingston Feed & Lumber, Inc.*, 381 N.W.2d 601, 604 (Wis. Ct. App. 1985).

The trustee contends that the provisions of the Agreement that allow Cicirello to "liquidate existing policies" by assigning them or terminating the Agreement is a separate contract from the rest of the Agreement. CM-ECF Doc. No. 110, at 3–5 (referencing subsections w. and h. of section 6. of the Agreement). The trustee points out that the sections containing these provisions are separate from those sections related to the selling and servicing of policies. *Id.* at 4. Cicirello, the trustee emphasizes, can assign policies under the contract without terminating the Agreement; the consideration paid by American Family for liquidating existing policies is different than it is for selling and servicing policies; and that, because the parties have performed the contract in good faith for more than twenty-five years, one of the Agreement's prerequisites for assignment has been met. *Id.*

But the policy-assignment and termination provisions contemplate Cicirello having performed under the Agreement for a decade, and the termination provision is further predicated on Cicirello turning over the policies and related records for which he had become a bailee under the Agreement. CM-ECF Doc. No. 100, Ex. A, §6.l. & w. Looking at the Agreement ex ante Cicirello's assignment and termination rights cannot fairly be viewed as an agreement separate from the Agreement's other provisions, those related to the selling and servicing of policies. Most basically, Cicirello cannot assign policies to another agent if he has not yet sold any policies. Nor can Cicirello receive extended earnings payments if he has not sold and renewed any policies.

The trustee's attempt to characterize the Agreement's assignment and termination provisions as severable—that is, as a separate agreement for purposes of §365—is nonsensical when viewed from the time of contract formation. The characterization is made sensible only when one examines whether the provisions could be given effect separate from Cicirello's other contractual duties now that he has performed those duties for more than a decade. But taking that viewpoint is to ignore, as Wisconsin law says, "the essence of the contract." Here that essence lies in Cicirello's agreement to perform as American Family's loyal agent in the placement of insurance and American Family's obligations to compensate Cicirello for that performance both on an ongoing basis and when Cicirello and American Family agree that Cicirello's duties will be assigned to other agents. The assignment and termination provisions that provide a means of transitioning American Family policy holders from Cicirello to other American Family agents cannot be fairly construed as a stand-alone contract because those provisions would have no effect absent performance under the other provisions of the Agreement. Unlike truly separate agreements, it makes no sense to consider Cicirello and American Family to have entered into the assignment and termination provisions without having entered into the Agreement's provisions making Cicirello an American Family insurance agent. Otherwise stated, the parties would not

have logically executed a contract allowing for Cicirello to liquidate policies without also executing the Agreement's other obligations. The Agreement's policy-assignment and termination provisions, therefore, cannot be severed.

### III

The trustee's motion for turnover of property is denied.

If the trustee contends that adjudication of his objection to Cicirello's claim of exemptions remains necessary even though the court has denied the request for turnover, then the trustee must file an explanatory memorandum in support of his objection on or before August 31, 2018. If the trustee does not timely file a supporting memorandum, the court may overrule the trustee's exemption objection on or after September 1, 2018, as being mooted by the denial of turnover. If the trustee timely files a supporting memorandum, Cicirello must file a response no later than fourteen days after the date on which the trustee files his supporting memorandum.

#####